# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRANDT INDUSTRIES, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-cv-0857-TWP-DML |
| | ) | |
| PITONYAK MACHINERY CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| PITONYAK MACHINERY CORPORATION, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDT INDUSTRIES, LTD., and BRANDT | ) | |
| AGRICULTURAL PRODUCTS, LTD., | ) | |
| | ) | |
| Counter-Defendants. | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's Motion for Summary Judgment. The Plaintiff in this matter is Brandt Industries, Ltd. (referred to in conjunction with BRANDT Agricultural Products, Ltd. as "BIL") and the Defendant-Counter Plaintiff is Pitonyak Machinery Corporation ("PMC").[1]  This case arises out of a trademark dispute between BIL and PMC brought under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.,* pertaining to the use of the mark BRANDT in connection with the manufacture, advertisement, and sale of agricultural equipment in the United States.

---

[1] As the caption denotes, both PMC and BIL have filed counter claims in this matter.

1

The dispute between BIL and PMC first began in the United States Patent and Trademark Office ("PTO") after each party attempted to register the BRANDT mark in connection with agricultural equipment.   After vigorously opposing each other's ownership claims in the BRANDT mark before the Trademark Trial and Appeal Board ("the Board"), the Board sustained PMC's opposition to BIL's trademark application as it applies to agricultural equipment, but dismissed the remainder of PMC's opposition to BIL's application. Subsequently, BIL was granted a federal trademark registration for the BRANDT mark in connection with custom manufacture and fabrication of machines and railroad equipment. Despite the Board's decision, both BIL and PMC continued to oppose each other's attempts at obtaining federal registration rights over the BRANDT mark in connection with additional goods.  Both BIL and PMC filed suits in this Court and the United States District Court for the Eastern District of Arkansas, respectively, asserting claims of trademark infringement and requesting declarations of their trademark rights with respect to the BRANDT mark.

In short, PMC argues that collateral estoppel bars BIL from re-litigating the issue of priority of use of the BRANDT mark in this Court after it was "actually litigated" before the Board.  BIL counters that its concession of priority for registration purposes does not extinguish its good faith common law rights.  For the following reasons, PMC's Motion for Summary Judgment (Dkt. 65) is **GRANTED** in part and **DENIED** in part.

## I. <u>BACKGROUND</u>

A.      **The Parties**

1.      **Brandt Industries LTD**

Since 1932, BIL has been operating under the name BRANDT and using the BRANDT mark in connection with agricultural equipment in Saskatchewan, Canada.  Brandt Industries, Ltd., through its wholly owned subsidiary Brandt Agricultural Products, Ltd., use the BRANDT

mark on a range of agricultural equipment including grain holding equipment, spraying equipment, light duty tillage equipment, and livestock feeding and processing equipment. In the early 1970s, BIL expanded its sales of agricultural equipment into the upper Midwest of the United States and Texas, Tennessee, and Arkansas. Throughout this period, BIL has expended considerable revenue to promote agricultural products bearing the BRANDT mark through advertisement and trade shows. BIL's annual sales of its agricultural equipment for the past decade have been in the tens of millions of dollars. *See* Semple Decl., Dkt. 68-1 at 2.

### 2. Pitonyak Machinery, LTD

In 1913, Edward Ellsworth Brandt began an equipment tooling service in Carlisle, Arkansas known as E.E. Brandt. Throughout the years, the Brandt family expanded their business in Arkansas and formed the following companies: John Henry Brandt, Brandt Machinery Works, and Brandt Manufacturing. In the 1960s, the family-owned Brandt businesses began operating, manufacturing, and selling agricultural equipment bearing the BRANDT mark within and around Carlisle, Arkansas and occasionally in neighboring southern states.[2] These businesses remained in operation until approximately December 2002 when the Brandt family-owned businesses were purchased by PMC through an Asset Purchase and Sales Agreement. Since acquiring the Brandt family-owned businesses in Arkansas, PMC's annual gross sales have been between $4.5 million to $6.5 million.

### B. Opposition Proceeding Before the Trademark Trial and Appeal Board

On November 2, 2001, BIL filed a federal trademark application with the PTO for Application Serial No. 76/333,303 ("the '303 Application"), seeking to register the mark

---

[2] In its Notice of Opposition, PMC alleged that "through its predecessor in interest, [it] has used its trade name, BRANDT, in connection with agricultural machinery since at least as early as 1945." *See* Dkt. 66-2 at 4.

BRANDT & Design for various goods and services including agricultural equipment.[3]  In addition, on December 4, 2002, PMC filed Application Serial No. 76/472,384 ("the '384 Application") seeking to register the BRANDT mark for goods related to agricultural equipment, (International Class 7) and railroad equipment (International Class 12).  Thereafter, on February 6, 2003, BIL filed a second application, Application Serial No. 78/211,667 ("the '667 Application")—the one at issue in this case—seeking to register the BRANDT mark in plain text in connection with International Class 7, International Class 12, and custom fabrication of machinery (International Class 40).[4]  The '667 Application lists 1973 as the date of first use.

On June 27, 2006, the PTO published the '667 Application for opposition on the Official Gazette for Trademarks.  On July 12, 2006, PMC filed a Notice of Opposition against the '667 Application with the Board.  As a result of PMC's opposition, the Board launched an opposition proceeding.  During the proceeding, both parties were allowed to serve written discovery requests, present testimony, and engage in cross-examination of witnesses.  PMC presented testimony from John Henry Brandt, a principal of Brandt Manufacturing, and Thomas Edward Pitonyak, and BIL had an opportunity to cross examine these witnesses.  On April 5, 2010, the Board issued its ruling on the opposition proceeding for the '667 Application and sustained PMC's opposition to BIL's application with respect to International Class 7.  Additionally, the Board stated "based on the instant record, Applicant [BIL] does not dispute Opposer's [PMC's]

---

[3] PMC filed a Notice of Opposition with respect to the '303 Application when it was published for opposition by the PTO.  *See* Dkt. 1 at 7.

[4] All goods or services are categorized within International trademark classes.   In this case, International Class 7 relates to machinery ("machines and machine tools; motors and engines; …agricultural implements other than hand-operated…"); International Class 12 relates to vehicles ("vehicles; apparatus for locomotion by land, air or water"); and International Class 40 relates to treatment of materials ("treatment of materials").  *See Nice Agreement Tenth Edition-General Remarks, Class Headings, and Explanatory Notes*, http://www.uspto.gov/trademarks/notices/ international.jsp (last visited July 11, 2012).

claim of priority with respect to agricultural equipment." Specifically, the Board stated the following:

> At the outset, we note that applicant states in its brief that it "does not contest the claim that Applicant is not entitled to registration of its BRANDT mark in connection with the goods recited in International Class 7 of its application." (Applicant's Brief, p.3)  We view applicant's statement as a concession that there is a likelihood of confusion with respect to applicant's goods in Class 7. Accordingly, as indicated below, the opposition is sustained with respect to applicant's goods in Class 7.

*See* Dkt. 66-10 at 3. The Board did, however, rule in BIL's favor with respect to its application to register the BRANDT mark in connection with International Classes 12 and 40.  BIL was granted United States Registration No. 3,876,308 for the BRANDT mark and did not appeal the Board's decision to the Federal Circuit Court of Appeals.

On May 3, 2011, the PTO finally published the '384 Application for public opposition, and on May 9, 2011, BIL filed a Notice of Opposition to PMC's federal trademark application citing its U.S. Registration No. 3,876,308.  On May 10, 2011, BIL filed a motion to suspend its opposition pending the disposition of this civil action, which was subsequently granted by the Board.  In an attempt to move the prosecution of its application along, PMC filed a motion to set aside the Board's order to suspend the opposition proceedings which the Board denied. Therefore, proceedings in connection with PMC's '384 Application remains suspended pending the disposition of this civil suit.

## C.    Federal Lawsuits

On July 6, 2010, BIL filed suit against PMC in this Court seeking declaratory and injunctive relief.  Shortly thereafter, PMC filed a suit in the United States District Court for the Eastern District of Arkansas against BIL seeking declaratory judgment, injunctive relief, and a finding of trademark infringement over the use of the BRANDT mark.  On February 15, 2011,

District Judge James M. Moody granted BIL's motion to transfer the case, *Pitonyak Machinery Corp. v. Brandt Industries, Ltd., al et at.,* Case No. 4:10-cv-00772-JMM, to this Court.

In its Complaint, BIL claims it is entitled to a declaratory judgment of non-infringement (Count I), a declaratory judgment of priority (Count II), a declaratory judgment for estoppel by laches against PMC (Count III), and a finding of trademark infringement, unfair competition, and false designation of origin under the Lanham Act (Count IV).   In addition, PMC filed counterclaims against BIL asserting false designation of origin (Count I), common law trademark infringement and unfair competition (Count II), and seeking a declaratory judgment of priority in the BRANDT mark and exclusive right to register the mark with the PTO in connection with agricultural equipment (Count III).  Additional facts are added below as needed.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).   In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a

paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. <u>DISCUSSION</u>

**A.     PMC's Motion for Summary Judgment**

PMC moves for summary judgment on Counts I, II, and IV of BIL's complaint, Counts I, II, and III of PMC's counterclaims and on Count VI of BIL's counterclaim in the consolidated action.[5]   BIL and PMC both claim trademark ownership of the unregistered BRANDT mark. Absent a federal registration, "[c]ommon law determines who enjoys the exclusive right to use an unregistered trademark, the extent of such rights, and the proper geographical scope of any injunctive relief necessary to protect against the infringement of such rights." *Emergency One, Inc. v. Am. Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 267 (4th Cir. 2003).   "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."  *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996); *see generally Emergency One*, 332 F.3d at 268 ("The first user, then to

---

[5] In PMC's summary judgment briefing, it also asks the Court to grant summary judgment in its favor on Counts I, II, IV, V, and VI of the Counterclaims of BIL as well as Counts I and II of its Complaint stemming from the transferred case from the Eastern District of Arkansas (Case No. 1:11-cv-00233-TWP-DML).   However, as indicated previously in this Order, the action with the Case No. 1:11-cv-00233-TWP-DML was consolidated with this matter; and shortly thereafter, it was administratively closed by the Clerk of the Court.   Because the counts within BIL's complaint and PMC's counterclaim in this action are largely duplicative of the counts in the consolidated action, the Court will rule on PMC's motion with respect to the counts alleged in this action as well as on Count VI asserted by BIL in the consolidated action.   While the parties did not amend their pleadings to include this counterclaim, because the parties present arguments for Count VI in their summary judgment briefings, the Court will also rule on it.

appropriate and use a particular mark—the 'senior' user—generally has priority to use the mark to the exclusion of any subsequent—or junior—users.").

Finally, when two parties claim the exclusive right to use an unregistered mark "[t]he party who first appropriates the mark through use, and for whom the mark serves as designation of source, acquires superior rights to it." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999); *see also United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 100 (1918) ("[T]he general rule is that, as between conflicting claimants to the right to use the same mark, priority of appropriation determines the question."). Thus, to prevail on Count II and IV of BIL's complaint and Count III of PMC's counterclaim, BIL would need to establish two requirements: first, that it has priority of use in the BRANDT mark and second, that a likelihood of confusion exists among consumers as to the origin of BIL's and PMC's goods and services under the BRANDT mark.

### 1.    Declaration of Priority

PMC argues that BIL is collaterally estopped from raising the issues of priority of use and likelihood of confusion in connection with the BRANDT mark because those issues were already determined at the prior proceeding before the Board. Federal law permits the registration of trademarks and the enforcement of registered marks through the Lanham Act which makes "actionable the deceptive and misleading use of marks" and is meant "to protect persons engaged in…commerce against unfair competition." 15 U.S.C. § 1127(a). Beyond protecting federally registered trademarks, § 43(a) of the Lanham Act "protects qualifying unregistered trademarks…[and] the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768

8

(1992).  Additionally, § 2(d) of the Lanham Act also precludes the registration of a mark that is confusingly similar to a mark previously used in the United States by another when used in connection with the goods of an applicant.  15 U.S.C. § 1052(d).

Specifically, the relevant section "precludes the registration of a mark that so resembles a registered mark 'or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive[.]'"  *T.A.B. Sys. v. Pactel Teletrac*, 77 F.3d 1372, 1374 (Fed. Cir. 1996) (citing 15 U.S.C. § 1052(d)).  Thus, under this section, PMC, as the opposer, in its Notice of Opposition has the burden of establishing that it has prior, protectable rights in the BRANDT mark for agricultural equipment and BIL's use of the mark is likely to cause consumer confusion.  *See generally* 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 20:3 (4th ed. 2010) ("In an opposition proceeding, the opposer, as the party in the position of a plaintiff, has the burden of proof to establish that applicant does not have the right to register its mark.").

It is well settled that the right to a distinctive mark belongs to the person who first continuously uses the mark to identify or distinguish goods or services in commerce.  *See S Indus., Inc. v. Diamond Multimedia Sys., Inc.*, 991 F. Supp 1012, 1018 (N.D. Ill. 1998).  To establish prior use, PMC relied on its predecessors-in-interest's use and the proper chain of title relating to the BRANDT mark to establish that it had priority.  In addition, the record before the Board confirms PMC's priority claim.  For instance, in the Board's written decision relating to PMC notice of opposition, it stated that "[PMC]'s evidence demonstrates that, through its predecessor, [PMC] has used the BRANDT mark from at least the 1960s to the present in connection with agricultural equipment."  *See* Dkt. 66-10 at 4-5.  Moreover, PMC asserts that in

BIL's briefing, it essentially conceded the issue of priority by stating "based on the instant record, [BIL] does not dispute [PMC]'s claim of priority with respect to agricultural equipment." Argues that the doctrine of collateral estoppel precludes BIL from re-litigating the issue in this Court.

### a.    Application of Collateral Estoppel

The Seventh Circuit has articulated that collateral estoppel will apply if the following elements are met: (1) the issue sought to be precluded must be the same as that involved in a prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must have been fully represented in the prior action. *Matrix IV, Inc. Am. Nat'l Bank & Trust Co.*, 649 F.3d 539, 547 (7th Cir. 2011) (citing *H-D Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007)).   Additionally, courts give preclusive effect to the final determinations in an administrative proceeding "if 'the administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it where the parties have had an adequate opportunity to litigate.'"  *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)); *see also Hamdan v. Gonzales*, 425 F.3d 1051, 1059 (7th Cir. 2005) ("*Res judicata* applies to administrative proceedings….").

### b.    Are the Issues the Same?

PMC argues that all of the required elements associated with the doctrine of collateral estoppel are satisfied.  This Court must first determine whether the issues sought to be precluded were the same issues involved in the prior proceeding.  *See Matrix IV*, 649 F.3d at 547.  In the prior proceeding, PMC filed a Notice of Opposition with the Board in regards to the '667

Application on the grounds of priority and likelihood of confusion in accordance with Section 2(d) of the Lanham Act.  15 U.S.C.  § 1052(d); *see generally* MCCARTHY, *supra* Part A (1), at 20:14 ("By far the commonest ground upon which oppositions are brought…is [when]…the opposer contends that applicant's mark so resembles either (1) opposer's registered mark or (2) opposer's prior common-law mark or trade name, as to be likely to cause confusion.").  In this action, BIL seeks a declaration of priority from this Court, or more specifically, a declaration of its common law rights with respect to the BRANDT mark as they apply in certain geographical areas within the United States.  *See* Dkt. 1 at 8-9.  After reviewing the record of the Board proceeding, the Court finds that the issue of priority as it relates to applying for a federal registration is the same issue that was previously brought before the Board by the parties.

### 2.      Did the Parties Actually Litigate the Issues?

Second, the Court must determine whether the issue of priority was *actually litigated* between the parties.  The record of the Board's opposition proceeding involving the '667 Application, establishes that both parties actively engaged in written discovery and took deposition testimony of witnesses.  Legal counsel for both parties had an opportunity to take deposition testimony of John Henry Brandt and Thomas Edward Pitonyak.  *See* Dkt. 66-6, 7.  In addition, BIL, in its response briefing to the Board, acknowledged the evidence of record, including the testimonial depositions, exhibits, and written discovery.  Dkt. 66-9 at 8.  Moreover, BIL had an opportunity to adequately litigate the issue of priority in order to receive a federal registration of the BRANDT mark; however, BIL decided to concede the issue of priority.[6]  *See Lewis v. Microsoft Corp.*, 410 F. Supp. 2d 432, 436 (E.D.N.C. 2006) (finding the plaintiffs were

---

[6] *See* Dkt. 66-9 at 11. ("[B]ased on the instant record, Applicant does not dispute Opposer's claim of priority with respect to agricultural equipment.").

precluded from re-litigating the issue of priority as it pertains to their unregistered mark when there interest were fully and adequately represented in that action).

BIL counters PMC's preclusion argument by relying on *General Mills, Inc. v. Fage Dairy Processing Indus. S.A.*, 100 U.S.P.Q.2d 1584 (T.T.A.B. 2011). Specifically, BIL argues that the Board does not have original jurisdiction to adjudicate issues of trademark use resulting from common law rights and territorial priority as it relates to a claim of infringement. *See id.* at 1591 (noting that the Trademark Trial and Appeal Board is empowered to determine the right of registration only, but not the broader questions of infringement, unfair competition, damages, or injunctive relief). As such, BIL argues that the limited jurisdiction of the Board does not support applying preclusive effect because BIL did not have an opportunity to actually litigate certain claims. The Court agrees that the Board does not have the statutory authority to adjudicate Section 43(a) claims, *see Pure Gold, Inc. v. Syntex (U.S.A.) Inc.*, 221 U.S.P.Q. 151 (T.T.A.B. 1983), however, BIL's argument is misplaced because the issue before the Board involved priority of use as it relates to obtaining a federal registration. The Board has the authority to decide this issue. *See* 15 U.S.C. §§ 1052(d), 1063. As such, it appears BIL has confused the application of *res judicata* with the application of collateral estoppel.

*Res judicata* or claim preclusion, "prevents the relitigation of claims already litigated as well as those that could have been litigated but were not." *Palka v. City of Chicago*, 662 F.3d 428, 537 (7th Cir. 2011) (citing *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 310 (7th Cir. 2010). Applying the principle above, several courts have recognized that a registration proceeding does not present the same cause of action as an infringement action for claim preclusion purposes. *See Tonka Corp. v. Rose Art. Indus., Inc.*, 836 F. Supp. 200, 213 (D.N. J. 1993) (citing cases); *see also Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*, 424 F.3d 1229,

1232 (Fed. Cir. 2005) ("Registrability is not at issue in infringement litigation and although the likelihood of confusion analysis presents a 'superficial similarity,' differences in transactional facts will generally avoid preclusion.").  Because of the difference between the two proceedings, *res judicata* may be inapplicable because the same claims may not be presented during an opposition hearing as compared to an infringement suit in a district court.  *See Tonka*, 836 F. Supp. at 214. However, "[t]his conclusion does not affect the applicability in infringement suits of issue preclusion with respect to issues actually decided by the TTAB…in registration or cancellation proceedings."  *Id.* at 215.

The issue of priority in relation to obtaining a federal registration was one of the main grounds upon which PMC maintained its Notice of Opposition.  Because a determination of priority of use is a necessary element in an opposition hearing, BIL had the opportunity to actually litigate the issue.  The fact that BIL conceded the issue of priority as it applies to federal registration does not negate the fact that it had an opportunity to actually litigate the matter; but nonetheless, chose not to do so.  *See EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375, 378 (7th Cir. 1984) (finding plaintiff's argument that it was unable to present its case fairly was unpersuasive because plaintiff *chose* not to submit certain figure into evidence).  The Seventh Circuit articulated in *EZ Loader* "that the issue be *actually litigated* does not require that the issue be thoroughly litigated."  *Id.* (emphasis added).  Accordingly, the Court finds that the issue of priority of use as it applies to obtaining a federal registration has been actually litigated by the parties.

### 3.   Determination of the Issue is Essential to Final Judgment

Next, the Court must address whether the issue of priority was essential to the final judgment of the Board during the opposition hearing.  In short, in order for collateral estoppel to

apply, the issue must be necessary and essential to the Board's decision to dismiss the case. The Court finds the case of *Lewis v. Microsoft Corp.* to be instructive. In *Lewis*, the plaintiffs filed a petition for cancellation with the Board to cancel defendant's registration for the mark WINDOWS in light of plaintiffs' common law mark WINDOWPAD. 410 F. Supp. 2d at 434. During the initial cancellation proceeding, the Board found that the plaintiffs' use of the mark was junior to defendant's use and that they had abandoned the mark as well. *Id.* In a second cancellation proceeding over the same mark, plaintiffs argued they had common law trademark rights over WINDOWPAD and asserted that it existed prior to defendant's rights in WINDOWS. *Id.* In entering summary judgment for the defendant, the Board determined that the prior cancellation proceeding had preclusive effect over the latter proceeding. *Id.* Later, the Eastern District of North Carolina granted defendant's motion for judgment on the pleadings finding the Board's determination of priority that was "necessary and essential to the [Board's] dismissal of plaintiffs' cancellation petition…precluded plaintiffs from re-litigating the issue of priority in the case at bar." *Id.* at 436.

As in *Lewis*, the issue of priority of use was one of the main issues litigated between the parties during the opposition hearing. BIL's argues that *Lewis* is distinguishable from the case at hand because the plaintiffs had "four bites of the apple" after appealing the second Board ruling to the Federal Circuit and losing before filing suit in district court. However, the number of appeals filed by the plaintiffs is a non-issue. As is the case here, the district court in *Lewis* was affirming the ruling of the Board, which applied preclusive effect to priority when it was a necessary and essential to a final judgment. Accordingly, the Court finds that issue of priority of use was essential to the final judgment of the Board.

### 4.  Full Representation in the Prior Proceeding

Finally, the Court must determine whether the parties were fully represented during the prior proceeding.  The record of the Board proceeding shows that both PMC and BIL were represented by legal counsel.  In addition, both BIL and PMC filed responsive briefings as well as subsequent motions related to the Board's ruling in the opposition proceeding.  Furthermore, BIL has not disputed the fact that it was fully represented at the Board proceeding; therefore, the Court finds that both parties had full representation. For the reasons set forth above, the Court finds that all four elements of the doctrine of collateral estoppel have been satisfied.[7]

However, BIL asserts that in light of preclusive effect being applied to its concession regarding priority, the Court should not expand such a concession to have nationwide effect against it because of their common law rights associated with the mark.  The Court is persuaded by BIL's argument.  "Ownership of a common law mark does not necessarily afford the owner nationwide rights…[e]ven the owner of a *registered* mark, who enjoys a presumption of nationwide priority…is not automatically entitled to national injunctive relief."  *Emergency One*, 322 F.3d at 273 (emphasis in original).  Furthermore, "a trademark application is always subject to previously established common law trademark rights of another party."  *Johnny Blastoff*, 188 F.3d at 435.  Thus, the Court concludes that the concession made by BIL with respect to priority does not automatically allow PMC to claim senior rights nationwide in the BRANDT mark over BIL because a party's common law rights are preserved under the Lanham Act.  *See* McCarthy,

---

[7] In its briefing to the Court, BIL does not contest that collateral estoppel can extend to decisions of administrative bodies under certain circumstances; however, it argues that such circumstances do not exist in this case. Specifically, it argues that *Dunn v. Gull*, 990 F.2d 348 (7th Cir. 1993), compels the Court to ignore the doctrine of collateral estoppel in this action when the decision is not appealed to a federal appellate court first.  The Court disagrees.  As discussed earlier, courts give preclusive effect to decisions of administrative bodies if the administrative body is acting in a judicial capacity and resoles disputed issues of fact properly before it where the parties have had an adequate opportunity to litigate."  *Alvear-Velez*, 540 F.3d at 677.  The Board proceeding is an adversary proceeding, which allows for the admission of evidence through discovery and the presentation of arguments by both parties.  Thus, the Court finds that the Board in this action was acting in a judicial capacity. *See EZ Loader*, 746 F.2d at 378 ("There is no question that the T.T.A.B. [is] acting in a judicial capacity.").

*supra* Part A (1) (citing 15 U.S.C. § 1115(b)(5)) ("The common law rights of certain junior users who used before the senior user's registration are preserved by Lanham Act §  33(b)(5)."). Therefore, BIL's concession of priority is limited to its application for a federal trademark registration of the BRANDT mark for agricultural equipment.  As such, BIL is precluded from challenging the Board's priority determination based on evidence of abandonment or irregularities in PMC's chain of title.  *See Tonka*, 836 F. Supp. at 211 ("Issue preclusion cannot be avoided by offering evidence in the second proceeding that could have been admitted, but was not in the first.").  However, BIL is not precluded from presenting evidence as it relates to its common law rights associated with the BRANDT mark that show its priority of use of the mark with respect to certain geographic areas where it has established them.

Accordingly, PMC's Motion for Summary Judgment is **GRANTED** with respect to Count II of BIL's complaint which seeks a declaration of priority as to the BRANDT mark due to abandonment or irregularities in the PMC's chain of title.  And, PMC's motion is **DENIED** with respect to Count II of BIL's Complaint and Count III of PMC's Counterclaim seeking a declaration of priority rights for PMC in the BRANDT mark in all or substantially all of the United States.

### 5.    Common Law Trademark Infringement and False Designation of Origin

In Count IV of its Complaint, BIL argues that PMC is infringing on its common law rights in violation of § 43(a) of the Lanham Act.  *See* BIL Compl., Dkt. 1 at 12.  PMC also seeks a determination that BIL infringes on its common law trademark rights in the BRANDT mark in connection with agricultural equipment.  Specifically, PMC brings Counts I and II of its Counterclaim for "false designation of origin" and for "common law trademark infringement and unfair competition."   "Section 1125(a) provides relief for various categories of unfair

competition such as false designation of origin which 'is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activity by another person.'" *S Indus.*, 991 F. Supp. at 1017. Importantly, for both Counts I and II, PMC must demonstrate that it has a protected interest in the BRANDT mark for agricultural equipment and BIL's use of the mark is likely to cause consumer confusion, deception, or mistake.[8] *See* 15 U.S.C. § 1125(a); *Johnny Blastoff*, 188 F.3d at 436.

After arguing that BIL is precluded from re-litigating the issue of priority as well as likelihood of confusion, PMC asserts that it is entitled to a determination that BIL is infringing its common law rights. PMC cites the same argument to explain why BIL's claims of common law infringement must fail. The Court is not persuaded by PMC's arguments. As discussed previously, collateral estoppel does not apply to a determination of BIL's common law rights associated with the BRANDT mark in the geographic areas where it has established them. *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992) ("Under the common law, one must win the race to the marketplace to establish the exclusive right to a mark."). As such, genuine issue of material fact exists as to whether PMC has a protected interest in the BRANDT mark in geographic areas where it is subject to BIL's superior common law rights. *See* Semple Decl., Dkt. 68-1 at 2-3; Dkt. 68-2. Furthermore, BIL is not precluded from litigating the issue of likelihood of confusion under the doctrine of collateral estoppel because the Board did not meaningfully address the factual basis for finding a likelihood of confusion between PMC and BIL's use of the BRANDT mark. *See* Dkt. 66-10 at 3; *see also Levy v. Kosher Overseers Ass'n of America, Inc.*, 104 F.3d 38, 42 (2d Cir. 1997) ("For a TTAB or Federal Circuit determination

---

[8] With respect to the Board's decision on this issue, it stated "[w]e view applicant's statement as a concession that there is a likelihood of confusion with respect to applicant's goods in Class 7." *See* Dkt. 66-10 at 3.

of 'likelihood of confusion' to have collateral estoppel effect in a trademark infringement action, the TTAB or the Federal Circuit must have taken into account, in a meaningful way, the *context of the marketplace.*") (emphasis in original).  Because PMC cannot rely on the Board's findings as it applies to likelihood of confusion and there is a dispute as to its protectable interest in the BRANDT mark, PMC is not entitled to summary judgment on Count I and Count II of its Counterclaims.  Moreover, PMC is not entitled to summary judgment on Counts I and IV of BIL's Complaint, given that BIL may assert its common law rights associated with the mark in geographic areas where it has established them.  *See* Dkt. 68-2.  Accordingly, the Court finds that PMC's Motion for Summary Judgment is **DENIED** with respect to Count I and IV of BIL's Complaint and Counts I and II of PMC's Counterclaims.

### 6.     PMC's Alleged Infringement of BIL's Federally-Registered Trademark[9]

In Count VI of BIL's Counterclaims in the consolidated action, BIL alleges that PMC's use of the BRANDT mark in connection with agricultural equipment infringes BIL's federally-registered BRANDT mark which covers custom manufacture and fabrication of machines and railroad equipment.  In response to this claim, PMC argues that judicial estoppel bars BIL from arguing such a position.  "Judicial estoppel prevents a party that has taken one position in litigating a particular set of facts from later reversing its position when it is to its advantage to do so."  *Levinson v. United States*, 969 F.2d 260, 265 (7th Cir. 1992); *see also Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005).  To apply such a doctrine, a party must establish the following: "(1) the latter position must be clearly inconsistent with the earlier position; (2) the facts at issue must be the same in both cases; and (3) the party to be estopped

---

[9] Count VI of BIL's Counterclaim in the consolidated action was not included in its pleadings related to the current action.  However, in light of both parties' respective arguments related to the particular count, the Court will consider the issue for purposes of this Order.

must have prevailed upon the first court to adopt the position." *Urbania v. Central States, Se. & Sw. Areas Pension Fund*, 421 F.3d 580, 589 (7th Cir. 2005).

In the prior proceeding, the Board dismissed part of PMC's opposition directed toward the '667 Application because it determined that consumers were not likely to be confused between PMC's use of the mark in agricultural equipment and BIL's use of the mark with railroad and fabrication equipment *See* Dkt. 66-10 at 13 ("[W]e find that notwithstanding the identity of the marks, confusion is not likely because opposer's goods and applicant's goods and services in International Classes 12 and 40 are different, and the channels of trade and classes of consumers for the respective goods and services are likewise different."). With this prior action in mind, PMC argues BIL cannot today claim a likelihood of confusion exists amongst both parties' goods, when it argued the opposite conclusion in front of the Board. The Court agrees.

A contrary conclusion would allow BIL to reverse its position on the issue of consumer confusion taken at a prior proceeding in order to gain an advantage in a subsequent litigation. The purpose of the doctrine is to prevent this type of legal maneuvering. *See Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727-28 (7th Cir. 2010) ("The purpose of the doctrine is to reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant.") (citation and internal quotations omitted). The facts are the same in both proceedings as it relates to the underlying issue: whether a likelihood of confusion exists between BIL's and PMC's use of the BRANDT mark in the marketplace. Further, BIL's initial position on the issue of consumer confusion allowed it to prevail in the prior proceeding and was subsequently granted a federal trademark registration. Therefore, the Court finds that the doctrine of judicial estoppel applies here. Accordingly, PMC is entitled to summary judgment on Count VI of BIL's Counterclaim in the consolidated action. As such, Count VI is **DISMISSED**.

**7.      Declaration of Exclusive Right To Federally Register the BRANDT mark**

Pursuant to 15 U.S.C. § 1119, PMC seeks a declaration from the Court that it is entitled to register the BRANDT mark in accordance with its pending '384 Application.  In light of the rulings with respect to PMC's motion, the Court finds that PMC's request to certify an order to the Director of the PTO to register the trademark in accordance with the '384 Application is premature at this point in litigation.   Accordingly, the Court finds that PMC's motion for summary judgment with respect to Count III of its Counterclaim on this issue is **DENIED.**

## IV. <u>CONCLUSION</u>

For the reasons set forth above, PMC's Motion for Summary Judgment (Dkt. 65) is **GRANTED** with respect to Count VI of BIL's Counterclaim in the consolidated action and Count II of BIL's Complaint which seeks a declaration of priority for BIL as to the BRANDT mark due to abandonment or irregularities in the PMC's chain of title.   PMC's motion is **DENIED** with respect to Counts I and II of PMC's Counterclaims as well as Count I and IV of BIL's Complaint.   Additionally, PMC's motion is **DENIED** with respect to Count II of BIL's Complaint and Count III of PMC's Counterclaim seeking a declaration of priority rights for PMC in the BRANDT mark in all or substantially all of the United States.   Finally, Count VI of BIL's Counterclaim in the consolidated actions is **DISMISSED with prejudice**.

SO ORDERED.      08/08/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Daniel T. Earle
SHELSINGER ARKWRIGHT & GARVEY, LLP
danearle@sagllp.com

Heather M. Hawkins
THOMPSON HINE LLP
heather.hawkins@thompsonhine.com

Paul B. Hunt
BARNES & THORNBURG LLP
paul.hunt@btlaw.com

Jennifer Lynn Schuster
BARNES & THORNBURG LLP
jschuster@btlaw.com

James E. Shlesinger
SHLESINGER ARKWRIGHT & GARVEY, LLP
jim@sagllp.com

Carrie A. Shufflebarger
THOMPSON HINE LLP
carrie.shufflebarger@thompsonhine.com

Aaron M. Staser
BARNES & THORNBURG LLP
aaron.staser@btlaw.com